**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
JUDICIAL WATCH, INC.,                   )
                                        )
                    Plaintiff,          )
                                        )       Civil Action No. 07-1987 (PLF)
          v.                            )
                                        )
NATIONAL ARCHIVES AND                   )
RECORDS ADMINISTRATION,                 )
                                        )
                    Defendant.          )
_____)

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE,
FOR A STAY OF THE PROCEEDINGS**

Lacking in legal support, the arguments set forth in Plaintiff's response center on the

importance that Plaintiff places on its own FOIA request to the detriment of other FOIA

requesters.  Such arguments illustrate precisely why judicial assignment of Plaintiff's

voluminous FOIA request to the front of the queue would be inequitable and inappropriate under

the circumstances.

Although Defendant has assisted the Plaintiff in narrowing its original FOIA request

seeking over three million pages, the current FOIA request for approximately one million pages[1]

remains the largest and broadest request ever received by the Clinton Presidential Library and

still appears to be unprecedented under this Circuit's FOIA jurisprudence.  Plaintiff does not

attempt to refute the underlying legal principle advanced by Defendant – that a FOIA request

fails to reasonably describe records if it is overbroad in scope.  Nor does Plaintiff deny that the

burden of submitting a request that reasonably describes records lies with the FOIA requester.

While Plaintiff notes that NARA has an obligation under the Presidential Records Act ("PRA")

_____

[1]  After Defendant filed its Motion to Dismiss and provided Plaintiff with general
information concerning its records, Plaintiff agreed to narrow its request to the category of
"Working Files; Staff Office Files and Memoranda" within the Task Force records, consisting of
approximately one million pages of records.  See Pls. Opp Br. at Ex. 5 & 6.

to make records available to the public, that does not establish that Plaintiff has satisfied its burden of making a proper and reasonable request under the FOIA, and that FOIA's statutory scheme and timetable should therefore apply to this particular request.

Notwithstanding Defendant's Motion to Dismiss Plaintiff's claims, in support of Defendant's alternate Open America request, Defendant provided an extremely detailed declaration by Emily Robison, Deputy Director of the Clinton Presidential Library.  That declaration explained how FOIA requests are processed at the Library, described the Library's queue system, and represented that the Library would begin processing a portion of Plaintiff's FOIA request by the end of this calendar year and would continue to process portions of the request as they arise in the queue.  Using specific examples and objective measures rooted in case law, the declaration further explained how the Library has received an unprecedented number of FOIA requests, has inadequate resources to be able to process Plaintiff's FOIA request within FOIA's general timetable, has been exercising due diligence, and has shown reasonable progress in reducing its backlog.  The specific circumstances described in the declaration justify granting a stay of the proceedings, if the court does not dismiss the case outright.

In response, Plaintiff simply denies the existence of exceptional circumstances, asserting that the three-fold increase in FOIA requests at the Clinton Library as compared to other PRA libraries should have been expected because, in its view, there are many reasons why requesters would be interested in the same records in which it is interested.  Plaintiff similarly contends that Defendant's lack of due diligence is evident by the mere fact that Plaintiff's request has not yet been processed while Defendant has processed what Plaintiff deems to be "frivolous" FOIA requests by others.  And, although Plaintiff's position in the Library's queue system has continued to move up steadily since it filed its request, Plaintiff asserts that the Library's queue structure somehow does not support a due diligence finding because the Library uses a multi-track queue system for more efficient processing.  Plaintiff's arguments are simply not supported

by the facts or the prevailing case law, and accordingly, Plaintiff has failed to refute that a stay of proceedings is necessary and warranted in this case.

For the reasons set forth below, this Court should dismiss Plaintiff's FOIA claims. In the alternative, the Court should grant a stay of the proceedings to allow the Library to process the requested records as they arise in its queue system.

**I.      This Court Should Dismiss Plaintiff's FOIA Claims Because its Request Continues to be Inadequate Under the FOIA.**

In its opening brief, Defendant argued that a request is inadequate under the FOIA if it is so broad as to impose an unreasonable burden on the agency processing the request. Thus, Defendant advanced that the FOIA's reasonable description requirement applied not only to the agency's search for responsive documents, but also to the agency's review and processing of the responsive documents, such that a request could be improper due to its sheer breadth. Defs. Mot. to Dismiss, or in the Alternative, for a Stay of the Proceedings, at 15-20. As a general proposition, Plaintiff appears to concede this point. Plaintiff instead argues that, in this case, its now-revised request is reasonable given the function of the Library, and is nothing out of the ordinary. Plaintiff is wrong on both fronts.

First, although one of the functions of the Library is to make records available to the public, this does not mean that any FOIA request for such records is therefore valid. Plaintiff does not appear to dispute, for example, that a FOIA request for all of the Library's holdings would be improper. Thus, the issue is not – as Plaintiff casts it – whether the Task Force records should be processed for release under the PRA. Rather, the issue is whether Plaintiff's request is reasonable and adequately framed under the FOIA.

As Defendant stated in its opening brief, the PRA charges NARA with an independent obligation to make Presidential records available to the public. 44 U.S.C. § 2203(f)(1). While the Presidential Libraries respond to FOIA requests, they also work on other means of disclosing records, pursuant to other statutory mandates, such as, responding to special access requests for ongoing business of the President, the courts, and Congress. 44 U.S.C. § 2205. Also, as explained in the Robison Declaration, the Clinton Presidential Library has used the method of

systematic processing to process and release over one million pages of records prior to January 20, 2006, when the Library began accepting FOIA requests.  See Defs. Mot. to Dismiss, or in the Alternative, for a Stay of the Proceedings, at Exhibit A ("Robison Decl.") ¶ 14.  Systematic processing of records can be more efficient than traditional FOIA processing, because it allows the Library's archivists to process records in their archival and historical context.  Id. ¶ 25.  Thus, while one of NARA's obligations under the PRA is to make presidential records open to the public, it is clear that NARA has a process for doing so that can exist independent of the FOIA time frame.

Moreover, despite Plaintiff's contention to the contrary, processing Plaintiff's exceedingly broad request in the manner demanded by Plaintiff is not without its consequences to the Library's mission.  Plaintiff does not dispute that processing the volume of records that it seeks will likely take years to complete.  Likewise, Plaintiff cannot refute the fact that if the Library were ordered to vault Plaintiff's entire request to the front of the line and focus all of its efforts to complete the mammoth request from start to finish, then all other FOIA requesters, even those who have simpler and more manageable requests, will be pushed aside for years while the Library processes one request.  Indeed, Plaintiff seems keenly aware of this fact, and instead appears to advocate line-jumping over those who it deems to have "frivilous" [sic] requests, Pl's Opp. Br. at 15, despite the PRA's requirement that access to records "be granted on nondiscriminatory terms."  44 U.S.C. § 2204(c).  Plaintiff also ignores that the Library's archivists have various other obligations beyond FOIA processing, including reference services for the public; responding to requests from the White House, various government agencies, and the Clinton Foundation; and responding to "special access" requests for time-sensitive and often classified information under 44 U.S.C. § 2205, from Congress, the President, and the courts.  Robison Decl. ¶ 19.  Despite the severe burden that would be imposed on the Library as well as other requesters, and despite the fact that any harm that Plaintiff alleges as a result of a dismissal is significantly undercut by the fact that the records it seeks will ultimately be released, Plaintiff insists that a request of unprecedented scale is proper under the FOIA, notwithstanding that it

would result in an extended, court-monitored administrative process that may last for years. Plaintiff's position is untenable.

Second, Plaintiff's contention that its now-revised FOIA request is reasonable and renders Defendant's Motion to Dismiss moot is unfounded.  Plaintiff is, by its own description, a regular FOIA requester and, although it has been aware for some time now that its request for records encompassed over three million pages, it apparently never approached the Library to narrow its request.  It was Defendant that initiated discussions with Plaintiff regarding the narrowing of Plaintiff's broad request for records of the Task Force.  Defendant also provided Plaintiff with general information regarding the categories of records within the Task Force files, and Plaintiff narrowed its request to one of the categories encompassing approximately one million pages.[2]  Defendant's assistance in this matter, however, does not in any way undermine the fact that under the FOIA, the burden of ensuring that a request reasonably describes records lies squarely with Plaintiff, not with the agency.  See 5 U.S.C. § 552(a)(3)(A)(i); Judicial Watch, Inc. v. U.S. Dep't of Energy, 310 F. Supp.2d 271, 303-04 (D.D.C. 2004) (noting that "a requester has a duty to reasonably describe the records sought").  Thus, Plaintiff bears the burden in this case to submit a proper FOIA request, and the fact that it does not know the full contents of the records is not an excuse to ask for everything.  Further, Plaintiff appears to be very aware of the workings of the Task Force and the records currently available,[3] from which it could draw out a more specific, manageable request as previous Clinton Library FOIA requesters have done.

---

[2] In any event, Plaintiff's arguments regarding the timing of when it was approached to narrow its request are simply inapposite for purposes of Defendant's Motion.  Prior to Plaintiff's filing of this lawsuit, at the administrative level, the request was not close to the top of the queue and had not begun to be processed.  Thus, Plaintiff suffered no harm as a result of any failure to narrow the request.  However, once Plaintiff filed this suit under the FOIA, the question of whether its request was a proper and reasonable one under the FOIA, was brought to the forefront.

[3] For example, Judicial Watch's website lists, and provides links to, over thirty documents relating to the work of the Task Force.  See "Hillary Watch: Documents from the Clinton Library Archives," available at  http://www.judicialwatch.org/clinton-library-documents.

Plaintiff describes its now-revised request for one million pages of records as entirely reasonable and predictable, but this is belied by the legal authority cited in Defendant's opening brief.  See Def. Mot. to Dismiss at 16-20.  One million pages of records is a massive request by any standard.  Plaintiff's request remains the largest and broadest request ever received by the Library, see Robison Decl. ¶ 37, and the processing of such a request still appears to be unprecedented under this Circuit's FOIA jurisprudence.  Indeed, a FOIA request resulting in the retrieval of only half as many pages was once described by the D.C. Circuit as "enormous" and "perhaps the most extensive FOIA request ever made."  Meeropol v. Meese, 790 F.2d 942, 945-46 (D.C. Cir. 1986) (where agency had retrieved approximately 500,000 pages of records and ultimately released 200,000 pages).  While Plaintiff makes the unsubstantiated assertion that "any request for records regarding the [Task Force] is entirely reasonable in nature and, therefore, not unduly burdensome," Pl's Opp. Br. at 8, this is clearly not the case.[4]  Broad requests "for all documents 'relating to' a subject is usually subject to criticism as over-broad . . . . Such a request thus unfairly places the onus of non-production on the recipient of the request."  Com. of Mass. v. HHS, 727 F.Supp 35, 36 & n.2 (D. Mass 1989); see Irons v. Schuyler, 465 F.2d 608, 613 (D.C. Cir. 1972) (holding that a request for "all unpublished manuscript decisions of the Patent Office" was so broad as not to constitute a proper request under the FOIA); Hunt v. Commodity Future Trading Commission, 484 F. Supp. 47, 51 (D.D.C. 1979) (rejecting the requesters' broader interpretation of their FOIA request which would have included "virtually every piece of paper in Commission files nationwide"); Mason v. Callaway, 554 F.2d 129, 131 (4th Cir. 1977) ("[Requests for] all correspondence, documents, memoranda, tape recordings, notes, and any other material pertaining to the atrocities committed against plaintiffs, . . . including, but not limited to, the files of [various government offices] . . . typifies the lack of specificity that Congress sought to preclude in the requirement of 5 U.S.C. § 552(a)(3) that records sought be reasonably described.").  Plaintiff's request is inadequate under the FOIA

---

[4] Plaintiff never alleges that its initial request for three million pages of records was proper under the FOIA.

because processing a request of this magnitude under the strictures of the FOIA will impose an unreasonable burden on Defendant.  Plaintiff's FOIA claims are unreasonable and should therefore be dismissed.

**II.     Alternatively, this Court Should Grant a Stay of Proceedings to Permit the Clinton Presidential Library to Process its FOIA Requests in a Fair and Orderly Manner**

Should this Court decline to dismiss Plaintiff's FOIA claims at this time, then it should grant a stay of the proceedings.  Defendant has established that a stay is warranted under 5 U.S.C. § 552(a)(6)(C), and Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976) and its progeny.  Plaintiff's opposition summarily denies the realities of processing hundreds of complex FOIA requests in a resource-limited setting, and instead seeks to line-jump in front of other requesters.  Naturally, every requester believes that its request is the most important and should be given the greatest attention.  While this view may be an understandable one for a requester, it cannot be countenanced by the Court.  Indeed, Plaintiff's position actually underscores why stays for processing are particularly important in cases like this, where the Library has been diligent in responding to extraordinary circumstances, and court imposed line-jumping would mean that those requesters with the financial resources to go to court could overcome the rights of others.

**A.     Defendant has Established that the Library has Received an Unanticipated Number of FOIA Requests**

Plaintiff contends that "Defendant has not demonstrated that the volume of requests it has received is 'vastly in excess' of anything contemplated by Congress or that this volume is anything more than a predictable agency load."  Pls. Opp. Br. at 12.  Plaintiff offers no authority, however, to discount the objective measure that supports the Library's position, *i.e.*, the experiences of the other, most recent Presidential Libraries.  As Deputy Director Robison stated, "[i]n the first year of FOIA processing alone, the Library experienced an unexpected jump in the volume and complexity of the incoming FOIA requests themselves compared to the first year at other Libraries."  Robison Decl. ¶ 23. "In contrast to what transpired at the Reagan and Bush Presidential libraries," the Clinton Presidential Library experienced a *three-fold* increase in the

number of FOIA requests received in the first calendar year of FOIA processing.  Id. (emphasis added).  Also, unlike the experiences of the staff at the other libraries, the Clinton Presidential Library received particularly complex requests seeking voluminous records, which have not, unlike past precedent, been substantially narrowed by the requesters themselves.  Id.

It is well-settled law that in "considering a request for an Open America stay, '[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims[.]'"  Elec. Frontier Found. v. U.S. Dep't of Justice, 517 F. Supp.2d 111, 117 (D.D.C. 2007).  While Plaintiff notes reasons why it believes President Clinton's records would be in demand, pressing that "Defendant should have known that the number of requests for records would likely exceed by a substantial margin the number of requests received by the libraries of President Clinton's predecessors," similar arguments could be made with respect to every presidency by requesters who deem those particular issues important.[5]  Thus, Plaintiff's stated incredulity alone cannot counter the unrebutted testimony of Ms. Robison.

In addition to the unanticipated rise in FOIA requests, the Library is the first Presidential Library "to have a significant volume of born-electronic records," and during its first two years of FOIA processing, it has received requests for more than one million emails.  Id. ¶ 22.  While the Library has expended efforts to streamline the process for searching for and reviewing those electronic records, it has been required also to engage in the unanticipated process of "de-hexification," which has required substantial staff time.  Id.  The volume and complexity of FOIA requests is compounded by the volume of holdings and variety of formats of media controlled by the Library.  Although Plaintiff contends that the "sheer total volume of records" held by the Clinton Library does not constitute an exceptional circumstance under FOIA, the sheer volume and complexity of Clinton Presidential records does explain why each FOIA request demands more time of the limited staff.  See, e.g., Center for Public Integrity v. United States Dep't of State, No. 05-2313, 2006 WL 1073066, * 3-4 (D.D.C. Apr. 24, 2006) (noting that

_____

[5]   For example, the presidencies of Ronald Reagan and George H.W. Bush were marked by any number of notable events, including the Iran Contra Affair, the end of the Cold War, and the First Gulf War.

demands of complex, time-sensitive, and time-consuming document requests made, in part, "the demonstration required to justify a stay for 'exceptional circumstances'"); Elect. Frontier Found., 517 F. Supp.2d at 118 (finding staff shortage caused, in part, by time consuming initiatives to streamline FOIA processing with the development of the "Sentinel Project" and a "Central Records Complex" adequate to constitute exceptional circumstances because the initiatives led to a "short-term deficit in FBI FOIA processing resources").  In short, Defendant has established that it has received an unanticipated number of FOIA requests which has been further compounded by the complexity of the requests and the large volume of electronic and other records.

> **B.    Defendant has Established that the Library has Limited Resources, Inadequate to Process the Flood of FOIA Requests Within 20 Days**

The Robison Declaration, which is accorded a presumption of good faith, establishes that there are presently no more than six full-time equivalent archivists to process the millions of pages currently called for in pending FOIA requests.  Robison Decl. ¶ 18.  Those archivists review records "page-by-page, line-by-line . . . to ensure that all exempt information is properly identified and redacted," but also engage in the "time-consuming tasks of searching for, arranging, describing, and performing basic preservation on the responsive records."  Id.

Ignoring the case law of this Circuit, however, Plaintiff cites to a 1977 district court case from the Northern District of Illinois, for the proposition that "inadequate staff, insufficient funding or a great number of requests are not within the meaning of 'exceptional circumstances' as that language is used in the statute . . . ." Pls. Opp. Br. at 14.  On the contrary, as was made clear in Open America and as adopted in the Electronic Freedom of Information Act Amendments of 1996, exceptional circumstances exist, in part, when "the existing resources are inadequate to deal with the volume of" the unanticipated number of requests received by an agency.  Open America, 547 F.2d at 616.  Courts in this Circuit have routinely granted Open America stays when agency staffing and resources are inadequate to handle the FOIA requests submitted to the agency.  See, e.g., Elect. Frontier Found., 517 F. Supp.2d at 119 (finding that "staffing shortages facing [FBI's Record/Information Dissemination System] constitutes

'exceptional circumstances' under Open America"); Ctr. for Public Integrity, 2006 WL 1073066 at * 2 (exceptional circumstances exist if an agency's resources are devoted to the declassification of classified material of public interest).

Plaintiff likewise ignores the other important responsibilities of the archivists, including responding to "special access" requests from the incumbent President, Congress, and federal courts under 44 U.S.C. § 2205, which are often time sensitive and require the review of classified information.  Robison Decl. ¶ 19.  As Ms. Robison explained, archivists also answer reference requests from the public, the Clinton Foundation, the former President, and others.  Id. Since January 2006, archivists have responded to 3,600 separate reference inquiries. Id. Archivists also staff the Library's textual and audio-visual research rooms when researchers are present, and the Library's research room has had 432 visits from the public.  Id.  Finally, as noted by the Robison Declaration, archivists spend time improving the functionality of access to electronic records, as well working on museum exhibit issues, and a variety of other administrative issues as they arise.  Id.  Such other responsibilities of the FOIA processors are routinely considered by the courts in favor of an Open America stay.  See Ctr. for Pub. Integrity, 2006 WL 1073066, at *3; Edmonds v. FBI, 2002 WL 32539613, at *2 (D.D.C. Dec. 3, 2002). Based on the number of currently pending requests alone – putting aside the continuing submission of additional requests – it is not difficult to conclude that the staffing is inadequate to deal with the volume and complexity of submitted requests.

### C.    Defendant has Established that the Library has Exercised Due Diligence in Processing FOIA Requests

Despite receiving an unprecedented number of FOIA requests relative to the other Presidential Libraries, it is undeniable that the Library has worked diligently, expeditiously, and in good faith given its resource constraints.  As documented in Ms. Robison's Declaration, the Library began, at the outset, by preparing and organizing the millions of pages of records, training its staff, and even releasing one million pages systematically before it began accepting FOIA requests.  Thereafter, as the rise of FOIA requests and backlog became an issue,

Defendant began undertaking numerous efforts to alleviate the problem, including by revising its queue structure to add a multi-request queue so that the Library could better respond to requesters seeking access to the same or similar files, by conducting an in-house study to review ways of achieving faster processing, by expending significant resources to address the increase of electronic records through the Electronic Records Archives project, and most significantly, by submitting a budget request for 15 new archivists, a large number of whom would be dedicated to reducing the FOIA backlog at the Clinton Presidential Library.  See Robison Decl. ¶¶ 22, 24-25.  None of these initiatives has been controverted by Plaintiff.  Instead, Plaintiff urges that these efforts do not prove due diligence with respect to Plaintiff's particular FOIA request, because "the Library still has not begun processing any part of Plaintiff's request."  Pls. Opp. Br. at 15.  This argument is flawed on many levels, not to mention that the Defendant has begun processing records for one of Plaintiff's many other FOIA requests to the Clinton Presidential Library.[6]

First, Plaintiff inappropriately conflates "due diligence" with the timely processing of its own FOIA request.  Plainly, due diligence cannot be described as the timely processing of a plaintiff's FOIA request; otherwise, it would not be a required element of an argument for *additional* time to process a plaintiff's FOIA request.  Due diligence can be shown here by the Library's many systematic efforts in reducing the FOIA backlog, working to achieve faster processing of FOIA requests, as well as requesting additional FOIA resources. See, e.g., Electronic Frontier Foundation, 517 F. Supp.2d at 120 ("The Court finds no grounds upon which to reject the factual assertions set forth in [the agency's] declaration, which sufficiently establishes that the [agency] has exercised due diligence on both *a systemic level* and with respect to EFF's FOIA request.") (emphasis added).  Second, the efforts of due diligence of both the processing and reducing the backlog of FOIA requests will, contrary to Plaintiff's assertions,

---

[6]  As noted in a Judicial Watch News Release entitled, "National Archives to Release Hillary Clinton's White House Daily Schedules to Judicial Watch Before March 20," available at http://www.judicialwatch.org/national-archives-release-hillary-clinton-s-white-house-daily-schedules-judicial-watch-march-20, the Library anticipates releasing records responsive to Plaintiff's request for the daily schedules of former First Lady Hillary Clinton by March 20, 2008.

work to Plaintiff's advantage.  Any steps that speed up the processing of requests that are ahead of Plaintiff's request in the Library's queue structure, will mean that the Library will reach Plaintiff's request faster.  At the very least, if NARA's budgetary request for additional archivists is funded by Congress, those resources would be particularly useful in the actual processing of a massive, time-consuming request like Plaintiff's, meaning that Plaintiff would receive records sooner.  Third, Plaintiff disregards the due diligence with respect to its particular FOIA request.  The Library quickly assigned Plaintiff's request a FOIA request number, placed it in the multi-request queue once that queue was created, always promptly responded to all inquiries by Plaintiff, affirmatively informed Plaintiff of responsive documents that had already been made publicly available, and assisted Plaintiff in its research visits to the Library.  While Plaintiff might not deem such cooperation to be indicia of due diligence, it cannot negate the case law to the contrary.  See Appleton, 254 F. Supp. 2d at 9.  Further, Plaintiff's FOIA request has moved up steadily in the Library's queue structure, as it started out behind 155 requests and, at the time of Defendant's motion, was behind 82 requests.  Robison Decl. ¶¶ 32-34.  Finally, Defendant continued this effort once the litigation began, by providing Plaintiff with additional information about the records it has requested in an effort to reduce the volume of records to be processed, so that the eventual production can be hastened and other FOIA requesters will have less time to wait for their own requests.

Plaintiff also claims that the Library has not been acting with due diligence because it has "responded to requests on UFOs" and requests regarding records on "a surprise birthday party for President Clinton."  Pls. Opp. at 16.  Plaintiff points to no authority for what seems to be its underlying proposition:  that the Library's due diligence should somehow be judged based on the subjective value of the other FOIA requests it has received or processed.  The Library has received many other requests, including time-sensitive requests from the incumbent President and the courts, as well as many FOIA requests, including several from Plaintiff for the "First Lady's Calendar" and other topics.  See Robison Decl. at Ex. 4.  By denigrating the Library's systematic efforts, and pointing to requests which it deems trivial, Plaintiff is effectively asking

this Court to sanction line jumping.  But, as this Circuit has held, queue-jumping by filing a lawsuit "would ultimately profit no one" because it would serve to increase the number of FOIA court proceedings and create an "invidious and unintended distinction" between plaintiffs who could afford to litigate their FOIA requests and other plaintiffs who "would not have the financial resources to hire a lawyer and go to court."  Open America, 547 F.2d at 615.

In addition, Plaintiff contends that the Library's queue structure does not demonstrate due diligence because it has multiple tracks and is allegedly not a "first-in first-out" system.  At the outset, Plaintiff misunderstands the Library's queue structure.  As the Robison Declaration explains, the "Library has established 17 separate access queues, 16 for FOIA requests and one for mandatory review requests of classified documents . . ."  Robison Decl. ¶ 17.  The declaration goes on to describe the 16 FOIA queues in more detail, noting that they consist of one "multi-request" queue for records subject to multiple requests, and five queues divided by the type of media requested (textual, electronic, etc.).  Id.  The five media-based queues are each subdivided into large, medium, and small requests, making for a total of 15 media-based queues. Id. ("categories (1) through (5) identified above are then further divided by the volume of records initially estimated to be responsive: (1) large . . . (2) medium . . . or (3) small").  Thus, taking the one multi-request queue plus the 15 media-based queues, the Library has 16 FOIA request queues, not the over eighty queues that Plaintiff implies.  See Pls. Opp. Br. at 16 ("Each of these 17 queues apparently is then subdivided into five subgroups . . . .").  Further, contrary to Plaintiff's assertion that "a request is placed in a particular queue based on the type of records requested, not based on when it was received," the Robison Declaration makes clear that "[w]ithin each of these fifteen queues, the FOIA cases are organized by date received."  Robison Decl. ¶ 17.

Plaintiff's primary objection to the Library's queue system appears to be that there are multiple tracks, rather than a single track.  Plaintiff notes the possibility that with multiple tracks, one track may, at any given point, move faster than, or have fewer requests than, the others. However, the multi-track approach to FOIA processing has been utilized by several agencies,

and has been upheld by the courts in this Circuit as a fair and orderly system.  See, e.g.,

Open America, 547 F.2d at 614 ("There is no allegation by plaintiffs that the FBI procedure,

treating each request on a first-in, first-out basis *after initially separating the requests into the*

*simple and the difficult tasks for appropriate processing*, is anything but fair, orderly, and the

most efficient procedure which can be adopted under the circumstances") (emphasis added);

Elect. Frontier Found., 517 F. Supp.2d at 115 & n.6 ("Requests [made to the FBI] are placed in

one of three queues, based on the total amount of material responsive to the request, and are

assigned to one of the Disclosure Units . . . based on the date of their arrival within the

appropriate queue."); Ctr. for Public Integrity, 2006 WL 1073066 at * 4 ("The Department [of

State] processes requests on a first-in, first-out basis, with two tracks-simple/fast and

routine/complex."); Appleton, 254 F. Supp. 2d at 9 (finding due diligence by FDA because, *inter*

*alia*, the agency used a multi-track system where part of the requester's request was placed in the

"'complex' track, which operates on a first-in, first-out basis").

       The principle on which Plaintiff objects – that some queues may move faster than others

– is prevalent in any system that has more than one queue.  Indeed, it appears that the problem of

which Plaintiff complains has no outer limit, because even where there is a single track, if there

are multiple FOIA processors and more than one FOIA request is being processed at any given

time, there will undoubtedly be instances in which an easier request that was filed after a more

complex one would be released first.

       Moreover, Plaintiff has benefitted from the queue system, as at least portions of its

request will begin to be processed by the Library within the calendar year.  As explained in

Defendant's opening brief, prior to receiving Plaintiff's request for all the records of the Task

Force, the Library received a request for "Ira Magaziner files on Health Care Task Force/Health

Care Reform."  Robison Decl. ¶ at 33.  Of the 154,330 pages of records responsive to this third

party request, approximately 72,000 pages are also responsive to Plaintiff's request.  Id.  As a

function of the multi-request queue, however, the Library will process the 72,000 pages of the

request first, because it overlaps with Plaintiff's request.  Id.  Thus, Plaintiff will receive records

earlier than it otherwise might have.  Id.  As both a practical and a legal matter, having a complex track, first-in, first-out system does not defeat the due diligence with which the Library has been proceeding.

Finally, Plaintiff argues that the Library is "falling further behind as its backlog is increasing," pointing to the increase in the number of pending requests.  Pls. Opp. Br. at 14.  That increase, however, is not a function of a lack of diligence by the Library, but a function of the unanticipated number and complexity of the FOIA requests actually received.  As was noted by the court in Center for Public Integrity,

> To the extent that an agency is unable to reduce its backlog due to an unpredictable increase in the number of FOIA requests, the 1996 amendments do not disqualify an agency from an Open America stay of proceedings.  This is because the amendments link the requirement to demonstrate 'reasonable progress' to those cases where an agency claims exceptional circumstances based on 'predictable agency workload.'  The legislative history contemplates that where an agency faces an 'unforeseen' increase in FOIA requests and the request for a stay is not based on a 'routine backlog,' a stay may be justified notwithstanding the lack of a reduction of the backlog.

Ctr. for Public Integrity, 2006 WL 1073066 at *4.  In short, the number of FOIA requests received by the Library has not remained constant, and the short-staffed library has been laboring to process the pending – and continuing influx of – requests.  Pointing to a snapshot statistic showing an increase in the number of requests does not undermine the Library's reasonable progress in reducing the "backlog" of requests.   To be sure, "'[r]easonable progress,' [ ] does not require that annual backlog reductions be uniform," and in fact the court in Appleton granted the agency a stay under Open America in spite of actual increases in the agency's FOIA backlog.  Appleton, 254 F. Supp. 2d at 10 & n.4.

The Library is still in its relative infancy in processing FOIA requests and in refining its processing methods to release records rapidly to the public.  However, by its early efforts in training staff, organizing files, and systematically processing records, as well as adding a multi-request queue, conducting studies of faster FOIA processing, and requesting additional resources for FOIA processing, the Library has demonstrated the due diligence adequate to justify a stay of the proceedings.

\* \* \*

In sum, Defendant has established that it has worked with due diligence to process the many FOIA requests in its queue and to reduce the backlog of requests, despite the extraordinary circumstances that the Library has faced.  As noted in Defendant's opening brief, courts have routinely granted stays in similar situations, and have granted stays of one year or more with the opportunity and expectation that additional time may be sought after that.  If this Court does not dismiss this case and instead grants a stay of the proceedings, Defendant respectfully requests that an Order be issued staying the pending proceeding for one year (with an opportunity at that point to seek additional time as needed to complete the processing), in order for the Library to begin processing the first portion of Plaintiff's request (concerning Ira Magaziner's Task Force files).  As for the remaining portions of Plaintiff's request, if deemed necessary by this Court, NARA is prepared to submit a status report within 120 days of the entry of any stay, to advise the Court and Plaintiff of the status of those remaining portions of the request in the Library's FOIA queue.

## **CONCLUSION**

For all of the reasons noted above, this Court should dismiss this action for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  In the alternative, Defendant respectfully requests that an Order be issued staying the pending proceeding in the manner described above.

Respectfully submitted this 10th day of March, 2008.

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO

Assistant Branch Director

OF COUNSEL                              /s/ Varu Chilakamarri
JASON R. BARON                          VARU CHILAKAMARRI
(DC Bar No. 366663)                     Trial Attorney, Federal Programs Branch
Director of Litigation                  U.S. Department of Justice, Civil Division
Office of the General Counsel           Tel: (202) 616-8489
National Archives and                   Fax: (202) 616-8470
Records Administration                  varudhini.chilakamarri@usdoj.gov
8601 Adelphi Road, Suite 3110
College Park, MD 20740                  Mailing Address:
Telephone: (301) 837-1499               Post Office Box 883
Fax: (301) 837-0293                     Washington, D.C. 20044
jason.baron@nara.gov                    Courier Address:
                                        20 Massachusetts Ave., NW, Rm. 7226
                                        Washington, D.C. 20530


                                        *Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2008, a true and correct copy of the foregoing Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss or, in the Alternative, for a Stay of the Proceedings, was served electronically by the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF) and that the documents are available on the ECF system.

/s/ Varu Chilakamarri
VARU CHILAKAMARRI