**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JUDICIAL WATCH, INC., :
:
      Plaintiff, :
:
  v. : Civil Action No. 07-1267 (JR)
:
U.S. NATIONAL ARCHIVES AND :
RECORDS ADMINISTRATION, :
:
      Defendant. :

## MEMORANDUM ORDER

      Judicial Watch filed a FOIA request for the telephone log books from Hillary Clinton's tenure as First Lady. The Clinton Library, which is administered by the defendant, was unable immediately to comply because it is inundated with other FOIA requests. It placed Judicial Watch's request in a queue and moved for a stay under <u>Open America v. Watergate Special Prosecution Force</u>, 547 F.2d 605 (D.C. Cir. 1976), urging that the Court not allow the request to jump the line because of the pendency of litigation. I took the extraordinary step of allowing discovery into the Library's queue structure to deal with Judicial Watch's dark suspicion that its request was being run to the sidelines. As it turns out, the Clinton Library's queue structure appears to be fair, reasonable, and efficient. Because it is, and because the Library has satisfied the other elements of an <u>Open America</u> stay, NARA's motion [15] is **GRANTED** and this case will be **stayed** for one year from the date of this order.

A stay in FOIA litigation is available to "allow the agency additional time to complete its review" when "exceptional circumstances exist." See 5 U.S.C. § 552(a)(6)(C). The Court of Appeals considers the circumstances exceptional when: (1) the agency is "deluged with a volume of requests for information vastly in excess of that anticipated by Congress"; (2) "existing resources are inadequate to deal with the volume of such requests within the time limits"; and (3) "the agency can show that it is exercising due diligence." Open America, 547 F.2d at 616. The manifest purpose of the Open America decision was to prevent FOIA requesters from barging to the head of the line by merely filing a lawsuit. The Court of Appeals thought Congress would approve:

> We do not think that Congress intended, by fixing a time limitation on agency action and according a right to bring suit when the applicant has not been satisfied within the time limits, to grant an automatic preference by the mere action of filing a case in United States district court. Because the pernicious results of such an interpretation are so blatantly obvious, certainly under the "exceptional circumstances" which have materialized since passage of the 1974 amendments, we refuse to attribute such dim vision to the Congress.

Id. at 615.

All Open America requirements are fully satisfied here. First, the Library has shown that there has been a "deluge" of requests. The Library received 211 FOIA requests, amounting to roughly 5,260,000 pages, in the first two months after the end of

the moratorium on access to the records of the Clinton presidency.  See [15, Attachment 1] at ¶ 4.  By the close of its first year, the Library had received 336 FOIA requests.  Id.  This stands in stark contrast to the Reagan and Bush presidential libraries, each of which received about 100 requests in its first year of processing.  Id. at ¶ 29.  The vast volume of electronic data in the Clinton Library also creates special problems that have not been encountered to an equal extent by other presidential libraries.  See id. at ¶¶ 27-28.  Millions of e-mail records and electronic systems must be indexed and searched to respond to requests, and some requests find thousands of responsive e-documents that must be reviewed for presidential privilege and FOIA exemption.

The second element of the Open America test has to do with resources, and the Clinton Library's are quite limited.  The Library has the equivalent of six full-time archivists, and they spend over half of their time solely on FOIA requests.  Id. at ¶ 24.  Their duties involve, not only the search for responsive documents, but also line-by-line review of information to ensure that privileged and exempt information is not released.  Id.  The staff has significant non-FOIA responsibilities, including museum duties, reference requests, and "special access" requests, from Congress, the President, and federal courts, which often require detailed review of classified information.  Id. at ¶ 25.  Given

the responsibilities of the archivists and the deluge of FOIA requests that they encounter, the Library does not have "existing resources . . . []adequate to deal with the volume of such requests within the time limits." Open America, 547 F.2d at 616.

Third, the Library is exercising "due diligence" on both a systemic level and with regard to Judicial Watch's particular FOIA request. Cf. Elec. Frontier Found. v. U.S. Dep't of Justice, 517 F. Supp.2d 111, 120 (D.D.C. 2007) (crediting both systemic and individualized evidence of due diligence). The Library has already produced more than 11,000 pages of information in response to one portion of plaintiff's FOIA request. It has also requested more archivists from Congress, and it has studied and implemented methods of achieving greater efficiency in the processing of FOIA requests.

Chief among the measures that the Library has designed to enhance the efficiency of its limited work force is its multi-queue, "matrix" system for processing requests. There are 17 different queues. One is for confidential materials that require mandatory privilege review, and three are for audio-visual materials. Twelve of the remaining 13 queues are created through various combinations of three categories: size (large, medium, or small); subject matter (electronic or textual); and secrecy (classified or non-classified). The final queue is called the "multi-request queue," encompassing searches for materials that

are responsive to multiple FOIA requests. FOIA processing at the Clinton Library essentially cycles through these 17 lines, taking the earliest request from one line, then the earliest request from the next line, and so on in a loop. See [22, Attachment #1] at 14-19.

The multi-request queue is a helpful innovation allowing important and timely requests to be reached more quickly than they otherwise might. Indeed, Judicial Watch has benefitted from the fact that its requests have been moved into this queue. See [22, Attachment #1] at 91-94. Thus, even if there is some merit to plaintiff's argument that the queue structure violates the letter of FOIA's "first-in, first-out" principle – one requester filed later than Judicial Watch and has now moved ahead of it because of the matrix system – Judicial Watch can raise no such complaint because it has itself leapfrogged several dozen prior requesters. Id.

Indeed, the matrix method that the Library has adopted allows it to process requests of widespread interest in a more timely manner while still preserving reasonable priority for FOIA requests that are filed first. The overworked librarian who must slowly process this information line-by-line is owed no less deference than the anxious requester who must wait in line for the results, even if the democratic process is slowly mooting the very purpose of the request. Under Open America, so long as the

- 5 -

librarians are doing their part diligently – and they appear to be – Judicial Watch must abide by the kindergarten commandment to wait one's turn.

```
                              JAMES ROBERTSON
                          United States District Judge
```