IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civ. Action No. 07-1987 (PLF) |
| | ) |
| U.S. NATIONAL ARCHIVES AND | ) |
| RECORDS ADMINISTRATION | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S NOTICE AND
FILING OF SUPPLEMENTAL DECLARATION**

Plaintiff, by counsel, hereby submits this response to Defendant's Notice of Filing Supplemental Declaration ("Supplemental Declaration"). Per this Court's order of April 29, 2008, the purpose of the Supplemental Declaration was to address the factual questions raised in Plaintiff's motion for limited discovery. Answers to some of these questions had previously been obtained as a result of the discovery granted by Judge Robertson in a similar case. *Judicial Watch, Inc. v. National Archives & Records Admin*, Case No. 07-1267 (D.D.C.). Plaintiff sought information regarding the functioning of the "queue system," not just in its own interest, but for the public's interest in understanding how Freedom of Information Act ("FOIA") requests to the Clinton Presidential Library ("Library") are being processed.[1]

---

[1] In his recent opinion granting a stay, Judge Robertson colorfully suggests that Plaintiff is seeking to "jump the line." On the contrary, Defendant has the burden of establishing that the Library is properly handling Plaintiff's and other FOIA requests through its queue system. Unless or until Defendant meets this burden, there is no "line" to "jump." Moreover, Plaintiff waited more than a year and half after submitting its FOIA request before it filed suit, even though Defendant had a statutory responsibility to comply within 20 days. Now, more than two years after Plaintiff submitted its request, the Library apparently has only just started to

## **MEMORANDUM OF LAW**

Most of Plaintiff's questions regarding the structure and functioning of the queue system now have been answered. Plaintiff believes, however, it is important to respond to certain points raised in the Supplement Declaration, including a factual matter raised for the first time.

1.  Defendant concedes for the first time that requests are not being processed on a "first-in first-out" basis. Supplemental Decl. at 4. Apparently, however, according to the Supplemental Declaration, Plaintiff largely has been a beneficiary of the Library's re-ordering of requests by having at least portions of Plaintiff's request moved ahead of other more timely requests. Of course, as Plaintiff has previously noted, this benefit may be temporary. *See* Docket No. 13 (Pl.'s Mem. in Opp. to Def.'s Mot. To Dismiss Or, In the Alternative, For a Stay of the Proceedings and In Supp. of Pl.'s Mot. For Limited Disc., at 16-17). Other requests could move ahead of Plaintiff's request if they subsequently are placed in another queue with fewer requests. The Library might also make future adjustments to the queue system which have the effect of moving Plaintiff's request back down the "line," just as it appears to have currently moved Plaintiff's request forward in line. In any event, it is clear that the current queue structure is not governed by the first-in first-out principle set forth in *Open America v. Watergate Special Prosecution Force* (547 F.2d 605, 615 (D.C. Cir. 1976)) but is, in fact, a far more complex system designed for administrative efficiency.

2.  The Supplemental Declaration offers new facts apparently intended to defend Defendant's estimate as to the number of records responsive to Plaintiff's request. As discussed

---

review a portion of the requested records, with no estimate of when records may actually be produced. Rather than trying to "jump the line," Plaintiff has been quite patient while it continues to wait for Defendant to fulfill its responsibilities under FOIA.

at the recent status conference, Defendant's estimate regarding the number of responsive records in the case before Judge Robertson turned out to be highly inaccurate.[2]  In this case, the Supplemental Declaration concedes that the estimate is "only a very rough approximation" and "may vary" from the actual number of responsive records.  Supplemental Decl. at 5.  The Supplemental Declaration also concedes that the Library's estimate is based on simply counting boxes, and that the Library has no knowledge of the actual number of documents, much less responsive documents, in any of the boxes.  *Id.*

The number of responsive records is a key issue.  Defendant seeks to have this case dismissed on the basis that Plaintiff's request constitutes an "undue burden."  In addition to reasons set forth in Plaintiff's opposition, this argument must fail because, as now largely conceded by Defendant, it has no reliable estimate of the actual number of responsive records.  The accuracy of the estimate of responsive records also is significant as it may well affect the length of any stay that might be granted, if the Court were inclined to grant a stay.

3.       In regard to the Library's resources, the Supplemental Declaration confirms that Defendant has taken no action, other than request additional archivist positions in the next fiscal year, to address the growing backlog of FOIA requests at the Library.  Supp. Decl. at 9.  In fact,

---

[2]       The Library's initial estimate was 180,000 responsive records; the revised estimate was 30,000 responsive records.  *See Judicial Watch, Inc. v. National Archives & Records Admin.*, No. 07-1267 (Def.'s Mot. For *Open Am.* Stay and Mem. of P. & A. In Supp. of Def.'s Mot. For a Stay of the Proceedings, at 10 n.1).  Defendant claims that this error, which was discovered only after a later review of the request, will not recur here, even though no physical search has been done in this case.  Hence, it is entirely possible that a similarly significant error may have occurred in this case.  For example, Defendant has previously admitted that an undetermined number of non-responsive records are included in the boxes which it believes also contain responsive records.  *See* Docket No. 13 (Pl.'s Mem. in Opp. to Def.'s Mot. To Dismiss Or, In the Alternative, For a Stay of the Proceedings and In Supp. of Pl.'s Mot. For Limited Disc., Exhibit 5 (description of "Category 6").

the deposition conducted in the case before Judge Robertson confirmed that the number of archivists tasked with processing requests at the Library has remained unchanged since 2006. Tr. at 66:15-16. These facts cast further doubt on Defendant's ability to demonstrate that it has exercised "due diligence" *from the outset* in responding to Plaintiff's and other FOIA requests. *Oglesby v. Department of the Army*, 920 F.2d 57, 62 n.3 (D.C. Cir. 1990) ("The court [has] authority to allow the agency additional time to examine requested records in exceptional circumstances where the agency was exercising due diligence in responding to the request *and had been since the request was received*." (*quoting* H.R. Conf. Rep. No. 1380, 93 Cong., 2d Sess. 11 (1974)) (emphasis added).

## Conclusion

For the reasons set forth in Plaintiff's opposition and for the reasons above, Defendant has not established a sufficient basis for an indefinite stay. Accordingly, Defendant's request for an indefinite stay of this lawsuit pursuant to *Open America* should be denied.

Date: May 23, 2008                             Respectfully submitted,

                                               JUDICIAL WATCH, INC.


                                               /s/ Paul J. Orfanedes
                                               D.C. Bar No. 429716

                                               /s/ James F. Peterson
                                               D.C. Bar No. 450171

                                               501 School Street, S.W., Suite 500
                                               Washington, DC 20024
                                               Tel: (202) 646-5172
                                               Fax: (202) 646-5199

                                               *Attorneys for Plaintiff*